Evans V. Brewster, S.
One of the cotrustees of the residuary trust for the benefit of decedent’s wife has petitioned the court for advice and directions with respect to the allocation between principal and income, of certain taxes paid by the trustees attributable to capital gains realized by the trust. Decedent’s wife, the income beneficiary and cotrustee, urges that the tax be charged to the principal of the trust. The remaindermen of the trust have been made parties but failed to appear in the proceeding.
Decedent owned a fractional interest in property known as 1855 Broadway, New York City which was valued for estate tax purposes at $10,326.93. This property was subsequently transferred to the trustees of the residuary trust. On October 1, 1964, the trustees in order to facilitate the management of this property, entered into a limited partnership agreement with the other owners of the aforesaid property for the purpose of carrying on the business of owning and operating the real property. Depreciation on the property was deducted annually in the partnership tax returns and for five years preceding 1975, the depreciation deduction resulted in the partnership showing a net loss. In fact the trust’s share of the loss was in excess of the amount of dividend and income received from the other investments held by the trust. As a consequence, the trust reported no "distributable net income” for the five calendar years preceding 1975 and the income beneficiary of the trust has been able to report no income from the trust despite having received the dividend interest income earned by the trust investments other than this property.
The partnership real property was subject to a mortgage in excess of $1,650,000. After having an operating loss for several *897 years, the partnership defaulted in making the required payments under the bond and mortgage as a result of which the mortgagee foreclosed its lien on July 1, 1976. Under the tax law, a foreclosure is treated as a regular sale of the property and any resulting gain or loss must be reported. The depreciation deductions which had been taken on the real property (and which gave rise to the losses reported for income tax purposes) served to reduce the basis of the partnership property to such an extent that the adjusted basis was less than the mortgage debt which was canceled on the foreclosure. Thus, for tax purposes, the foreclosure resulted in a long-term capital gain for which the trust is charged $13,479.77 for its share of Federal income taxes and $7,960.32 for State income taxes.
While in theory and for accounting purposes, depreciation allowed on property is placed in a capital account for replacement of the depreciated property, frequently, as in the present case, no sums are set aside in a capital replacement account. The capital gain earned on the property because of the depreciation deductions was also a bookkeeping or accounting profit and the questions posed by the petitioner are (1) whether a capital gain was in fact received by the trust where nothing was received and the entire benefit has inured to the income beneficiary and (2) whether the income taxes payable on this illusive capital gain should be borne by the capital or principal of the trust or by the person benefited.
EPTL 11-2.1 (subd [a], par [13]) provides as follows:
"(a) Duty of trustee as to receipts and expenditures.
"(1) A trust shall be administered with due regard to the respective interests of income beneficiaries and remainder-men. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expense is charged to income or to principal or partly to each (A) in accordance with the terms of the trust instrument, notwithstanding any contrary provisions in this section; (B) in the absence of any contrary terms of the trust instrument, in accordance with the provisions of this section; or (C) if neither of the preceding rules of administration is applicable, in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as those entitled to principal and in view of the manner in which men of ordinary prudence, discretion and judgment would act in the management of their own affairs.”
*898 Insofar as clause (A) (supra) is concerned, it reaffirms the basic rule that the intention of the testator is controlling with respect to the provisions of the trust. In the will before the court, there is nothing therein contained that reveals any intention expressed or implied with respect to the allocation to be made of a charge for taxes of any kind.
Clause (B) (supra), refers to the provisions set forth in this section with respect to the allocation charges. EPTL 11-2.1 (subd [1], par [4]) provides that the "following charge shall be made against principal: * * * (C) any tax levied upon profits, gain or other receipts allocated to principal notwithstanding denomination of the tax as an income tax by the taxing authority.” It would thus appear that since depreciation of capital was responsible for a capital gain, a literal application would require the capital gains tax should be charged to principal. It appears to the court, however, that the words "any tax levied upon profits, gain or other receipts allocated to principal” must have reference to such cases where in fact a profit, gain or receipt was realized. In the usual case, capital gains are a return or an addition to trust corpus and principal of the trust should bear the tax attributable thereto. If the trustees set aside the amount deducted for depreciation to preserve principal in fulfillment of their duty, the reserve would be wholly applicable to principal and the source of the capital gain. However, in this case, there was no reserve. The capital gain is nothing more than a paper entry which has come about by reason of the depreciation deduction having reduced the base of the property below the amount realized upon the foreclosure. There was no addition to, appreciation of or replacement for the trust principal. As applied here it is more closely akin to property which has been depleted and which under the statute (EPTL 11-2.1, subd [1], par [5]) would require a tax allocation in accordance with what is reasonable and equitable. To the extent that the income beneficiary received the benefits of the deduction for depreciation without any concomitant benefit to trust principal, equity requires that the charge for the capital gains tax be placed on the person receiving the capital gain.
In Matter of Holloway (68 Misc 2d 361), the court was similarly faced with a question of allocation of taxes by reason of a distribution of principal to four residuary trusts where those distributions were "deemed” income by the taxing authorities. In its first consideration of the case (67 Misc 2d 132) *899 the court charged the entire tax to principal under a literal interpretation of EPTL 11-2.1 (subd [1], par [4], cl [C]). However, upon reargument, the court recognized that the tax, in fact, was attributable to a receipt by a trust of income for accounting purposes and directed that the adjustment of taxes be made from income to principal stating "The court believes that a realistic view of this problem requires a determination based upon the purely equitable principle that the burden of income taxes should be charged to the account into which the taxed item goes (Matter of Mankowski, 110 N. Y. S. 2d 677, 681; Matter of Bixby, supra [140 Cal App 2d 326], p. 335; Ann. 108 A. L. R. 1138).” (Matter of Holloway, 68 Misc 2d 361, 365, supra.)
Since it would appear that EPTL 11-2.1 (subd [a], par [1], els [A], [B]) is not applicable, clause (C) requires a reasonable and equitable adjustment. Accordingly, the court directs that the income beneficiary be charged with the capital gains tax to the extent that the capital gain is attributable to the utilization of the depreciation deduction which augmented the income received by her. In accordance with EPTL 11-2.1 (subd [1], par [3]) the trustee may by means of reserves or other reasonable means charge the payment of tax by the income beneficiary over a reasonable period of time and withhold from distribution sufficient sums to regularize distributions.