OPINION OF THE COURT
Richard C. Delin, J.
This is a voluntary final accounting by a corporate and two individual coexecutors who elected, pursuant to subdivision (g) of section 642 of the Internal Revenue Code (US Code, tit 26, § 642, subd [g]), to deduct the estate administration expenses on the fiduciary income tax returns for the years 1973 through 1975 inclusive, rather than on the estate tax return. This election is a well-recognized postmortem estate planning device (Metzer, Deduction of an Estate’s Administration Expenses: Section 642(g) of the Internal Revenue Code and Its Impact, 21 Tax Law Review 459; 13 Real Property, Probate and Trust Journal, p 884). As a result of the executors’ election, the estate’s income taxes were reduced and its estate tax is increased. Pursuant to EPTL 11-1.2 (subd [A]), the codification of *464 the Warms adjustment (Matter of Warms, 140 NYS2d 169), the executors calculated the adjustment to principal from income in the exhibit annexed to the affidavit amending their account.
In making their calculation, the executors deducted from the administration expenses claimed on the income tax returns the decedent’s net “Income in Respect of a Decedent” (hereinafter referred to as IRD) under section 691 of the Internal Revenue Code (US Code, tit 26, § 691). The guardian ad litem for the infants interested in this estate objects to the executors’ deduction of IRD in making their Warms adjustment.
It should be noted that items of inclusion and deductions allowed for purposes of taxation are not based upon logic but upon arbitrary determinations of the tax law (Matter of Suderov, 156 Misc 661, 663, affd 249 App Div 763, affd 274 NY 525).
Items of income and deductions for tax purposes are defined in the Internal Revenue Code. For fiduciary accounts ing purposes, the New York Principal and Income Act, EPTL 11-2.1, determines principal, income and deductions.
IRD is a creature of the Internal Revenue Code. In general, it may be defined as the accrued income of a decedent which was not paid during his lifetime nor included in his final return and received after his death. It must be reported in both the estate tax return as well as the estate’s fiduciary return. If it is receivable by one other than the estate, it must be included in the recipient’s income tax return. IRD has the same character in the estate or the recipient’s hands as it would have if the decedent had received it. To eliminate the double taxation, subdivision (c) of section 691 of the Internal Revenue Code (US Code, tit 26, § 691, subd [c]) permits the recipient or the estate to deduct on the income tax return the estate tax attributable to the inclusion of IRD in the estate tax return. (For a detailed explanation of IRD and its reporting see Internal Revenue Service Publication No. 559, Tax Information for Survivors, Executors and Administrators; Newman and Kalter, Post-Mortem Estate Planning, Principal-Income Adjustments, NYLJ, Dec. 18, 1978, p 1, col 1; Michaelson and Blattmachr, In *465 come Taxation of Estates and Trusts [10th ed], pp 73-75; Rabkin & Johnson, Federal Income, Gift and Estate Taxation, § 54 [12]-[14].)
In support of the executors’ Warms adjustment, counsel has submitted the corporate fiduciary’s worksheets together with a detailed letter of explanation of the calculation. Examination of the worksheets reveals that the estate’s IRD consists of accrued dividends and interest on both United States Treasury bonds and Series E bonds, and New York, State and city, income tax refunds received during the years 1973 through 1975 inclusive aggregating $20,002.48. The deductions against IRD pursuant to the Internal Revenue Code (US Code, tit 26, § 126, subd [b]) consisted of real estate taxes, accounting and investment expenses totaling $4,205.78, leaving net IRD of $15,796.70. This last figure was used in computing the deduction on the fiduciary income tax return for the estate tax resulting from the inclusion of IRD in the estate tax return (US Code, tit 26, § 691, subd [c]).
The executors contend that if administration expenses had not been deducted on the fiduciary income tax returns, the net IRD would have been taxable and the taxes attributable thereto charged to principal since IRD is a principal item for fiduciary accounting purposes. Since the administration expenses were shifted to the income tax returns, the executors had a duty to allocate the impact of taxes paid between principal and income. They contend that principal had the benefit of $15,796.70 in income tax deductions and the remaining administration expenses of $183,714.95 decreased the income taxes on accounting income.
The guardian ad litem contends that IRD should not be used in calculating the Warms adjustment since there is no statutory authority for the use of IRD in making it. The deduction of IRD has the effect of decreasing the adjustment to principal by $4,091.34. Oddly enough, neither counsel nor the court’s research has indicated any reported case involving a Warms adjustment with IRD. In Harris, Estates Practice Guide (vol 3, 3d ed, Supp, § 768, p 26), there is a statement that when income taxes are payable as IRD, the income taxes attributable to such income is allocable to corpus and payable, from corpus. In most instances, the *466 amounts involved in IRD are relatively insignificant and in all likelihood the problems go unrecognized except by corporate fiduciaries and experienced estate practitioners.
In codifying the Warms adjustment and recommending the enactment of the New York Principal and Income Act, EPTL 11-2.1, the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates was aware of the conflict facing fiduciaries resulting from the allocation of receipts and expenses to income or principal. It, therefore, incorporated in both EPTL 11-1.2 and 11-2.1 language that the statute shall be effective “unless otherwise provided for in a will, deed or other instrument” (see Third Report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, NY Legis Doc, 1964, No. 19, pp 425-426).
In Matter of Dick (29 Misc 2d 648), sale of securities gave rise to a substantial capital gain. The Internal Revenue Code, by permitting the deduction of administration expenses which are normally payable from principal, reduced the distributable net income payable to the income beneficiary to her benefit and the detriment of principal beneficiary. The trustee sought to charge the income beneficiary with her share of the income tax payments. In sustaining the objection to the adjustment by the income beneficiary, the court said that though the inequity was created by the Tax Law, the court could not correct the inequity in the absence of legislation. Some commentators have stated that no adjustment is required so long as the inequity arises out of a nonelective operation of law (Lacovara, Trust Principal or Income? — Judicial and Legislative History in New York, 45 NYU L Rev 210, 255). Where, however, the will gave the fiduciary discretion in making the adjustment, the court refused to interfere with the adjustment made by the fiduciary (Matter of Lecompte, 52 Misc 2d 549).
Surrogate Bennett, in Matter of Holloway (68 Misc 2d 361), recognized the need for equitable adjustment to principal from income where a distribution of principal was taxable as income under the doctrine of “deemed income” under the Tax Law.
*467 In Matter of Pross (90 Misc 2d 895), Surrogate Brewster followed Holloway in directing an equitable adjustment where a capital gain resulted from the deduction for depreciation on real property (a book entry) resulting in the income beneficiary receiving the income free from tax. Equity required the adjustment so the tax burden should be charged to the account which receives the taxed items.
Subparagraph A of article EIGHTH of testatrix’ will authorized the corporate fiduciary alone to exercise any election granted under the Internal Revenue Code and further provides “it, in its discretion, shall determine if any adjustment shall be made either as between income and principal, or as between FUND A and FUND B, by reason of the fact that any deduction may have been taken and allowed for income tax purposes instead of for Federal Estate Tax purposes, or by reason of any election made by my said corporate Executor as to the date of valuation of my estate for Federal Estate Tax purposes.” This discretionary authority is analogous to that in the Lecompte (52 Misc 2d 549, supra) case.
Inasmuch as there has been no abuse of discretion by the corporate fiduciary as afforded under the decedent’s will, the objections of the guardian ad litem as to the IRD adjustment, within the Warms adjustment, in the affidavit amending the account is overruled.